UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-CT-3161-BO

SHERMAN A. THOMPSON, )
    Plaintiff, )
)
v. ) O R D E R
)
OFFICER RICHARDSON, et al., )
    Defendants. )

FILED
JAN 1 9 2011
DENNIS P. IAVARONE, CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

Sherman A. Thompson filed this 42 U.S.C. § 1983 action. He is a prisoner incarcerated within the North Carolina Department of Correction ("DOC") and he is housed at Central Prison in Raleigh, North Carolina. Plaintiff alleges Eighth Amendment violations for excessive force by Defendants Richardson and Carson. Defendants have filed a motion for summary judgment. Plaintiff filed a response. Also pending before the court are defendants' motion for a protective order, plaintiff's motion to compel discovery, motion for appointment of counsel, and motion for a polygraph test.

The incident at issue occurred on March 16, 2009 at 1:30 in the afternoon. Plaintiff states the events to be as follows. Defendant Carson notified plaintiff that he was being moved to a mental health cell with a camera. Plaintiff's cell door was opened for the transfer and defendant Richardson cuffed plaintiff's hands behind his back. Once inside the camera cell, plaintiff extended his hands through the food slot in the cell door to be uncuffed. Defendant Richardson then yanked, bent and twisted plaintiff's arms. Defendant Richardson allegedly tried to break both of plaintiff's wrists and to break his fingers. Defendant Richardson also ripped the stitches from plaintiff's right wrist. Defendant Carson did nothing to prevent defendant Richardson from

injuring plaintiff. This is plaintiff's explanation of his allegations and the facts associated with the claim of excessive force.

Nurse Supervisor Connie C. Levister affidavit states she is a Registered Nurse and has been since 1973. (Aff. Levister, , ¶ 3) In her current position as Nurse Supervisor III within the DOC at Central Prison, her duties and responsibilities are extensively in the In-Patient Mental Health Unit. (Id., ¶ 5)

Her affidavit states the following series of events. On March 7, 2009, plaintiff was admitted by physician order to the In-Patient Mental Health Unit 4 East at Central Prison. This is the "behavioral unit." Plaintiff was placed in therapeutic seclusion for elevated risk of self harm. On that day, plaintiff had caused a self-inflicted right forearm laceration which was closed with ten stitches. (Id., ¶ 7, attch.. med. records at 1, 2)

On March 16, 2009, at 3:16 a.m., plaintiff was observed to be resting quietly without problems. (Id., ¶ 8, attch. med. records at 4) At 1:14 p.m., Nurse Ojo noted plaintiff to be calm and not engaging in self injurious behavior. (Id., ¶ 9, attch. med. records at 4) Nurse Ojo changed the dressing on plaintiff's wrist. She noted within the medical records, six stitches and slight drainage. She provided oral medication to plaintiff for the itching of which he complained. (Id.)

Approximately thirty minutes after Nurse Ojo changed the dressing, plaintiff was banging on his cell door. (Id., ¶ 10 attch. med. records at 4) Prior to this plaintiff had been instructed not to bang on his door. (Id.) Nurse Ojo contacted Dr. Deron Coy, who ordered plaintiff's demotion. (Id.) Plaintiff was demoted to Level One conditions which meant he could only have a mattress and smock or blanket. (Id.)

At 2:45 p.m. Nurse Ojo noted plaintiff refused to give up his property in his cell and "Use of force indicated." (Id., ¶ 11, attch. med. records at 4) The affidavit explains this does not mean force was used, but instead that hands-on force might be needed if plaintiff continued to be uncooperative with mental health staff directives. (Id.) Dr. Coy was notified and directed plaintiff to be moved to "Cell 407" a cell with a video camera for twenty-four-hour observation. (Id.) Plaintiff was handcuffed and moved. (Id.) He was to be checked every thirty minutes by staff. After being transferred, plaintiff was "cursing and complaining, refused to allow handcuffs to be removed, had removed the dressing from his right wrist wound, and would not allow Nurse Ojo to apply a new dressing." (Id.) Nurse Ojo also noted that plaintiff had coated the cell from which he was transferred with soapy water. (Id.)

At approximately 8:00 p.m. on the same day, March 16, 2009, plaintiff allowed nursing staff to apply a new dressing. (Id. ¶ 12, attch. med. records at 5). He refused his evening meal, but he took his prescription medications. (Id.) He was noted to be quiet and showed no signs or symptoms of self injurious behavior. (Id.)

On March 17, 2009 at 3:10 am, he was observed to be "resting quietly, voiced no complaints, was in no apparent distress, and did not show any agitation." (Id., ¶ 13, attch. med. records at 5)

On March 17, 2009, at 12:50 p.m., Nurse Ojo changed his dressing again. (Id., ¶ 14, attch. med. records at 5, 8) The physician's order was to remove the stitches, however, Nurse Ojo found none. (Id.) Therefore, she noted assessment was needed by a Family Nurse Practitioner. (Id.) No odor or significant drainage was noted. (Id.)

3

On March 17, 2009, at 5:04 p.m., plaintiff requested analgesic medication for hip pain. (Id.)

In Nurse Levister's opinion, mental health records do not support the allegations that custody staff was responsible for the removal of the stitches or injured fingers. (Id. ¶ 17) She states it is more likely plaintiff removed the stitches himself. (Id.) She bases her opinion on plaintiff's failure to report to nursing staff any alleged injury from custody staff. (Id.) She also notes that when he was transferred no notation suggests his wound was lacking stitches, bleeding, or otherwise abnormal, and there were no injuries to his fingers. (Id.) Nurse Ojo's two observations of plaintiff's wrist on March 16, 2009 at 1:14 p.m. and March 17, 2009, at 12:50 p.m. were not medically distinct. (Id.) If the stitches had been ripped out on March 16th, there would likely have been "observable blood stains and swelling or redness around the wound." (Id.) Lastly, plaintiff has a history of self-injurious conduct consistent with a medical conclusion that "he removed the stitches." (Id.)

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted & emphasis removed). A trial court reviewing a summary judgment motion should determine whether a

4

genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. See Matsushita, 475 U.S. at 587. The court can rely on the medical affidavits and prison medical records, including mental health records, in ruling on a motion for summary judgment. See generally, Stanley v. Hejirika, 134 F.3d 629, 637-38 (4th Cir. 1998); Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995); Marshall v. Odom, 156 F. Supp. 2d 525, 530 (D. Md. 2001); Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (4th Cir. 1982).

Government officials are entitled to qualified immunity from civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The Fourth Circuit has recognized a two-pronged qualified immunity inquiry. First, the court must "decide whether a constitutional right would have been violated on the facts alleged." Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003). Second, assuming the right is violated, "courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." Id. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by, Pearson v. Callahan, ___ U.S.___, 129 S. Ct. 808 (2009). A court has discretion to decide which step in the two-prong test to analyze first. Pearson, 129 S. Ct. at 821.

5

Case 5:09-ct-03161-BO   Document 46   Filed 01/19/11   Page 5 of 7

On the dates at issue before this court, it was clearly established that the Eighth Amendment forbade the "unnecessary and wanton infliction of pain" against inmates. Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). Not every infliction of pain is forbidden, however, and prison officials may apply force to an inmate "in a good faith effort to maintain or restore [prison] discipline." Id. at 320 (internal quotation marks omitted). However, where prison officials use force "maliciously and sadistically for the very purpose of causing harm," an Eighth Amendment violation has occurred. Id. at 320-21 (internal quotation marks omitted). Furthermore, the Supreme Court has recently held "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Wilkins v. Gaddy, ___ U.S. ___, ___, 130 S. Ct. 1175, 1176 (2010). The court must look at "the nature of the force rather than the extent of the injury." Id. "This is not to say the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry." Id. at 1178 (citation omitted). It is one factor in applying and reviewing the Eighth Amendment analysis. Id.

Plaintiff has failed to show a constitutional violation of his Eighth amendment rights. There is no showing that a reasonable officer would believe handcuffing an inmate to transfer him, per medical order, would violate that inmates federal constitutional rights. There is no indication that the correctional officers intentionally hurt plaintiff or caused him harm. There are no medical records indicating any injury of the fingers. Plaintiff himself, did not report any injury or attempted injury until he subsequently filed his grievances and this suit. Yet, at the same time now at issue, plaintiff did seek medical assistance and medication for his hip. The medical notes, and opinion of the Nurse Supervisor show, that on the day in question plaintiff

was considered to be a risk to himself and moved to a cell with a camera to facilitate his own protection from self injurious behavior. Plaintiff's claims of Eighth Amendment violations fail.

Accordingly, defendants' motion for summary judgment (D.E. # 35) is GRANTED and the case is DISMISSED and CLOSED. All other pending motions are denied (D.E. # 19, 20, 28, 32, 33, 38 and 44).

SO ORDERED, this 19 day of January 2011.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE